# EXHIBIT 5

## DECLARATION OF COURTNEY E. HAWKINS

I, Courtney E. Hawkins, Chief Operating Officer, City of Providence declare as follows:

1. I am over the age of 18 and competent to testify to the facts contained in this Declaration. I am the Chief Operating Officer of the City of Providence, Rhode Island.

2. I have served as the Chief Operating Officer of the City of Providence, Rhode Island, since January 2, 2023. In this capacity, I have direct responsibility for overseeing the City's operations, services, and budget, and I am familiar with the needs of Providence residents and the challenges facing our community. The facts set forth in this declaration are based on my personal knowledge, information provided to me by City staff in the course of their duties, and review of City records. If called as a witness, I could and would testify competently to the matters stated herein.

### I.   CITY OF PROVIDENCE SERVICES

3. The City of Providence, Rhode Island, is a municipal corporation organized under the laws of the State of Rhode Island and is authorized to bring the cause of action in this lawsuit under R.I. Gen. Laws § 45-15-1, which grants municipalities the power to sue and be sued and to exercise all powers necessary for the effective operation of municipal government and the welfare of its inhabitants.

4. Providence has a population of approximately 194,000 residents and is the capital city and major administrative and service center hub of Rhode Island.

5. Providence is also one of the most economically vulnerable cities in Rhode Island and New England. Our residents face significant economic challenges,

1

including high rates of poverty, unemployment, and food insecurity. According to recent data, approximately 21.3% of Providence residents live below the federal poverty line, compared to 10.8% statewide. Our residents include high percentages of children, seniors, people with disabilities, veterans, and households with limited English proficiency—populations that are particularly vulnerable to food insecurity and economic instability.

II. **PROVIDENCE RESIDENTS RELY ON SNAP BENEFITS**

6. According to data from the Rhode Island Department of Human Services, approximately 25,000 residents (16,000 children) in Providence receive SNAP benefits. These benefits are critical to preventing hunger and supporting food security among the City's residents.

7. For many of these households, SNAP benefits constitute the primary or sole means by which they can afford to purchase food. These benefits are typically loaded onto Electronic Benefits Transfer ("EBT") cards at the beginning of each month, and families plan their food budgets around the availability of these benefits.

8. Many of our City's residents live paycheck to paycheck with no savings or financial cushion. They depend on the timely and predictable issuance of their SNAP benefits to feed themselves and their families.

9. Providence is also one of the nine Rhode Island municipalities covered by the able-bodied adults without dependents ("ABAWD") waiver that USDA approved effective March 1, 2025, through February 28, 2026. This waiver was granted based on the lack of sufficient jobs for ABAWDs in Providence and was intended to

2

ensure that individuals who want to work but cannot find adequate employment would not lose their food assistance.

10. A significant number of Providence residents are subject to ABAWD work requirements. These individuals—able-bodied adults without dependents between the ages of 18 and 64—are subject to a time limit on their SNAP benefits unless they meet certain work requirements or live in an area covered by a waiver of those requirements.

### III. IMPACT OF SNAP BENEFIT SUSPENSION ON PROVIDENCE

11. On October 10, 2025, USDA issued a letter to all State SNAP agencies directing them to "hold their November issuance files and delay transmission to State EBT vendors until further notice." As a result, SNAP benefits will not be issued beginning November 1, 2025, to approximately 140,000 Rhode Islanders—including approximately 25,000 Providence residents.

12. USDA stated in its letter that if the lapse in appropriations continues, there will be "insufficient funds to pay full November SNAP benefits." However, USDA did not cite any legal authority for its directive and did not explain why it could not use available contingency funds and appropriations to continue SNAP benefits, as it reportedly has done for the WIC program. As a direct and immediate result of USDA's October 10, 2025 directive, and its October 24, 2025 memo formally suspending SNAP benefits, SNAP benefits will not be available to recipients in Providence beginning November 1, 2025.

13. As a municipality, Providence provides essential services and programs to support our residents, including public safety, public health, education, recreation, and various social services designed to help individuals and families achieve stability

3

and self-sufficiency. The City operates and funds essential service programs such as neighborhood community centers, legal aid, job training, affordable housing, benefits navigation and SSI/SSDI Outreach, Access, and Recovery (SOAR), child nutrition and community meals, homeless shelter operations, mobile outreach, Behavioral Health Crisis Response and Diversion programming, Safe Stations and recovery programs, Mental Health First Aid, maternal health programs, warming and cooling center operations, non-violence programming, health literacy, afterschool programming, and senior health and wellness events that collectively serve thousands of Providence residents each year.

14. The City also partners with and provides significant funding to local nonprofit organizations and food pantries that provide emergency food assistance and other support services to Providence residents, including but not limited to Capital City Community Center, DaVinci Center for Community Progress, Federal Hill House, Mount Hope Neighborhood Association, Nickerson Community Center, Silver Lake Annex, Washington Park Citizens Association, West End Community Center, and farmer's market voucher programs.

15. The City's ability to provide these services depends on careful planning and allocation of limited municipal resources. Providence operates with a constrained budget, and any significant increase in demand for City services or need to divert resources to address emergency situations creates substantial strain on our operations and impairs our ability to serve residents effectively.

16. The suspension of SNAP benefits will have immediate and severe consequences for Providence and its residents. Many households in the City rely on SNAP as their primary source of food assistance. When those benefits are suspended, the burden of meeting basic nutritional needs falls to local government and nonprofit service providers that already operate at capacity.

17. The City's community partners—including local food pantries and senior centers—have reported an increase in residents seeking emergency food assistance since the federal government shutdown began in early October. If November SNAP benefits are not issued, the City anticipates a surge in food insecurity and hunger that will far exceed available resources.

18. The City expects to experience a dramatic and unprecedented increase in demand for City services and programs as a result of the SNAP suspension. Residents who suddenly lose their primary means of purchasing food will turn to City resources, local food pantries (many of which receive City funding and/or operate in City-owned facilities), and other emergency assistance programs.

19. The City will be forced to expend significant additional financial resources to address the crisis created by the SNAP suspension. This may include canceling programs to enable reallocation of funding to emergency food assistance programs, staff overtime for emergency planning, communications, and logistics coordination for funding, food drives and food distribution, development and deployment of new public information communications tools and strategies to direct constituents to

alternative community resources, and reassignment of staff to assist residents in navigating the loss of benefits.

20. The City's 3-1-1 system, Center for City Services, Housing and Human Services Department and Public School Department will experience immediate strain. Staff are already fielding calls from residents seeking information about the SNAP lapse and guidance to alternative benefit programs to help meet their most basic needs. City personnel will be required to divert time and resources from their normal duties to assist affected households, including coordinating emergency food distribution, connecting residents with nonprofit partners, and responding to increased public safety and health concerns.

21. Providence will also face higher costs related to emergency services, including increased demand on its public schools' meal programs and food pantries (as more children arrive hungry or without adequate meals) and senior nutrition and health programs as SNAP benefits are well-documented to be associated with lower rates of hospitalization and improved health outcomes for enrolled seniors.

22. Although we understand that community members and philanthropic organizations are stepping up to donate to food banks and food pantries in this time of need, we have no expectation that donations will close the gap that SNAP benefits typically provide. Even if we saw exponential growth in charitable support, it would not replace the essential role that SNAP benefits play in ensuring food security for Providence residents.

23. The SNAP suspension undermines the City's ability to meet its legal and moral obligations to safeguard the welfare of its residents. The harm to Providence will continue to worsen each day that SNAP benefits remain suspended. These diversions of staff time and financial resources impair the City's ability to carry out its regular municipal functions and thus frustrate our mission of serving and supporting our residents. We cannot sustain this level of emergency response without devastating consequences for our city government and the community we serve, and the related decrease in local consumer spending associated with loss of SNAP will have further indirect impacts on the City's local businesses and economy.

## IV. IMPACT OF ABAWD WAIVER TERMINATION ON PROVIDENCE

24. Rhode Island received approval from USDA's Food and Nutrition Service for a partial ABAWD waiver effective March 1, 2025, through February 28, 2026. This waiver was granted based on the lack of sufficient jobs for ABAWDs in nine Rhode Island municipalities, including Providence, and was intended to ensure that individuals who want to work but cannot find adequate employment would not lose their food assistance. A significant portion of Providence residents are individuals who will be subject to ABAWD work requirements when the waiver expires.

25. In addition to suspending SNAP benefit issuances during the shutdown, USDA has also terminated Rhode Island's ABAWD waiver effective November 2, 2025. This termination occurred despite the fact that Rhode Island's waiver had been approved through February 28, 2026, and was based on USDA's own finding that Rhode Island lacks sufficient jobs for ABAWDs. The early termination of this waiver will directly harm City residents and City operations.

26. USDA's termination of the ABAWD waiver means that able-bodied adults without dependents in Providence who do not meet work requirements will begin losing their SNAP benefits after three months, even if they want to work but cannot find adequate employment.

27. Many residents in Providence who are subject to ABAWD requirements face significant barriers to employment, including limited English proficiency, lack of transportation, criminal records, or health issues that do not meet the threshold for disability. When these residents lose their SNAP benefits after three months of non-compliance, they will turn to City agencies for assistance with food, housing, and emergency needs.

28. The termination of the ABAWD waiver thus independently harms the City because it means that even if the immediate SNAP suspension is resolved, a significant portion of our population subject to ABAWD requirements will face loss of benefits in the coming months.

29. The termination of the ABAWD waiver will result in an entire category of Providence residents losing SNAP benefits four months earlier than expected and turning to City services and local food pantries for emergency assistance. For the same reasons that a suspension of SNAP benefits during the shutdown will frustrate the City's ability to serve residents and force us to divert municipal resources in response, the early waiver termination will also increase demand on our already-strained resources and prevent us from effectively carrying out our municipal functions.

30. The City anticipates that the termination of the ABAWD waiver will increase demand on its homeless shelter system, workforce development programs, community centers, and emergency food services. The City will be forced to divert staff time away from other municipal functions to meet the additional demand for case management and job placement support, benefits navigation assistance, and emergency services for residents losing SNAP benefits under the waiver termination.

31. The early termination of the ABAWD waiver will also exacerbate public health and safety issues within Providence. Hunger and poverty contribute to increased stress, mental health challenges, and instability that strain City resources across departments, including police, fire, and emergency medical services.

## V. HARM TO PROVIDENCE AND OUR CITIZENS ABSENT A TRO WOULD BE IRREPARABLE

32. The combined effect of the SNAP suspension and the ABAWD waiver termination poses an existential challenge to Providence' capacity to serve its residents. The City operates with a modest budget and limited reserve funds. The additional burdens caused by these federal actions will require the City to divert money and personnel away from essential municipal services, impairing its ability to function effectively. Each day that SNAP benefits remain suspended, and each additional day that ABAWDs are at risk of losing their SNAP eligibility, more families will go hungry.

33. The harm is not merely financial. Providence' relationship with our residents, the City's capacity to provide essential services, our public health and safety

systems, and our ability to plan and operate effectively are all being damaged in ways that cannot be quantified or compensated after the fact.

34. Similarly, the disruption to the City's educational, workforce development, and other programs caused by the need to divert resources to emergency food response or ABAWD-specific job placement and benefits advice would cause irreparable harm to the individuals and families who depend on those programs. Delays in education, job training, and support services can have lasting consequences that cannot be remedied later.

35. The uncertainty and crisis atmosphere created by the SNAP suspension and ABAWD waiver termination also harm the City's ability to plan effectively for our programs and services.

36. Children in Providence will suffer irreparable developmental, educational, and health consequences from food insecurity that cannot be remedied by later restoration of SNAP benefits. The harm of going hungry during critical developmental periods cannot be undone.

37. A temporary restraining order requiring USDA to immediately release November SNAP benefits and to restore Rhode Island's ABAWD waiver would directly remedy the harms to Providence. SNAP recipients would receive their benefits, reducing the demand on City services to sustainable levels and allowing the City to continue normal operations and provide our full range of municipal programs and services to residents.

38. Without such relief, the harm to Providence will be immediate and worsen each day. The longer the SNAP suspension continues, the more difficult it will be for the City to recover and restore our operations to normal functioning. The same is true for each day that Providence must absorb the responsibility of providing emergency support to ABAWDs affected by Rhode Island's early waiver termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2025.

Courtney E. Hawkins
Chief Operating Officer