## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND STATE COUNCIL OF
CHURCHES, *et al.*,

                    *Plaintiffs*,

       v.

BROOKE ROLLINS, *et al.*,

                  *Defendants*.

Case No. 25-cv-569-JJM-AEM

**EMERGENCY RELIEF
REQUESTED**

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY STAY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.  Plaintiffs file this lawsuit in response to USDA's improper withholding of funding for SNAP benefits ................................................................................................ 3

    B.  This Court issues an order requiring Defendants to make a full or partial payment of SNAP benefits for November ............................................................................ 4

    C.  Defendants decide to partially fund SNAP for November ............................................. 6

    D.  The partial funding of SNAP benefits causes Plaintiffs irreparable harm ...................... 8

ARGUMENT ..................................................................................................................... 10

  I.  The Court Should Enter a Further Order Enforcing the TRO ........................................... 10

  II.  In the Alternative, the Court Should Enter a New TRO on the Ground that the Decision Not to Fully Fund November SNAP Benefits Is Arbitrary and Capricious. ...................... 12

    A.  USDA's refusal to provide full funding is subject to judicial review ............................ 12

    B.  Defendants' decision to withhold full benefits is arbitrary and capricious .................. 15

      1.  Defendants failed to account for the practical consequences of partial funding ....... 16

      2.  Defendants' reasoning misapprehends USDA's statutory authority and Congress's intent ........................................................................................................ 17

      3.  The claimed need to conserve funds for child nutrition is implausible and contrary to the evidence ................................................................................................ 18

      4.  Defendants are arbitrarily and capriciously withholding SNAP funding for partisan political advantage ........................................................................................ 21

    C.  The remaining factors favor immediate temporary relief ............................................ 21

CONCLUSION .................................................................................................................. 23

i

## INTRODUCTION

Time is of the essence when it comes to hunger. Forty-two million people in this country who rely on the Supplemental Nutrition Assistance Program (SNAP) for basic nutritional needs—including children, senior citizens, and veterans—are now four days into November without any prospect of receiving their SNAP payments for weeks or even "several months," by Defendants' own account, because of Defendants' course of conduct. Because this Court's order did not contemplate that millions would be deprived of basic nutritional assistance for weeks (let alone months)—and indeed made clear that Defendants had to "expeditiously" ensure payments were to be received given the irreparable harm of being deprived of basic nutrition—Plaintiffs request that this Court act to enforce its temporary retraining order or, in the alternative, grant additional preliminary relief on the ground that the decision to deny full benefits is arbitrary and capricious.

When this Court granted a temporary restraining order making clear that there are sufficient funds available to continue SNAP benefits in full through this month, it gave Defendants two options: (1) provide full SNAP benefits for the millions of Americans who depend on the program for food assistance, or (2) provide only partial benefits, and "expeditiously resolve the administrative and clerical burdens [they] described in [their] papers" so as to enable partial payments to be made no later than November 5. Order at 5, ECF No. 19.

Defendants' action reflects neither option. Defendants' status report and accompanying declaration, filed yesterday, make clear that they have failed to expeditiously resolve the burdens associated with partial SNAP payments—in fact, Defendants indicate that, as a result of their choice, it _may take up to several months for partial benefits to be provided_. Suppl. Decl. of Patrick A. Penn (Suppl. Penn Decl.) ¶ 29, ECF No. 21-1. That is at odds with the Court's directive "to ensure the quick, orderly, and efficient implementation of the Court's Order, to

1

fulfill the statute designation of SNAP as an entitlement, and to alleviate the irreparable harm that the Court found exists without timely payment of SNAP benefits." Order at 4-5. Nor have Defendants exercised their discretion to provide partial payments in a manner that is not arbitrary or capricious. *Id.* at 5 n.6. Because it is clear that Defendants' plan cannot meet the Court's directives or adequately remedy Plaintiffs' harm, the Court should enforce its November 1 order by temporarily enjoining and compelling Defendants to release the unlawfully withheld funding, in its entirety, for November SNAP benefits.

In the alternative, this Court should grant a temporary restraining order on the grounds that Defendants' decision not to provide full SNAP benefits is arbitrary and capricious. Even though tens of billions of dollars are available for transfer from Child Nutrition Programs funds, even though not tapping into those funds will leave individuals and families without the food assistance they need for months, and even though Defendants previously tapped into those funds to keep the WIC program funded, they have refused to do the same for SNAP. In a declaration, a U.S. Department of Agriculture (USDA) official asserts that this decision was made to conserve the Child Nutrition funds. Suppl. Penn Decl. ¶ 9. But transferring funds to SNAP does not actually leave child nutrition underfunded now—and in fact poses no risk of leaving insufficient funds for Child Nutrition Programs unless the current lapse in appropriations lasts until next summer. That far-fetched concern about theoretical harms to those programs cannot justify Defendants' choice. In addition, Defendants ignore or fail to take seriously known and severe consequences resulting now from their unreasoned and unreasonable decision. For example, Defendants acknowledge there will be a lengthy delay in several states, yet nowhere do they account for the consequences of this delay on the people and communities reliant on SNAP benefits.

2

The Court should enforce its existing order by entering a further order requiring Defendants to make full SNAP payments for November immediately. Or, in the alternative, it should enter a new temporary restraining order and preliminary stay pursuant to 5 U.S.C. § 705, barring Defendants from carrying out their arbitrary and capricious decision not to provide full funding for the SNAP benefits that individuals and families need in November, preliminarily setting aside that decision, and compelling the agency to revert to the longstanding status quo ante of fully funding SNAP benefits.

## BACKGROUND

This case stems from Defendants' decision to place millions of people's access to basic nutritional assistance—SNAP payments—in crisis during a government shutdown despite Congress' clear intention that SNAP be available.

### A. Plaintiffs file this lawsuit in response to USDA's improper withholding of funding for SNAP benefits

Despite years of guidance to the contrary, on October 10, 2025, USDA issued a memorandum informing state officials that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits for approximately 42 million individuals across the Nation." Dep't of Agric., *Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025* (Oct. 10, 2025), https://perma.cc/LDG4-DQMC. USDA followed up with another memo on October 24, stating that it was "suspending all November 2025 benefit allotments until such time as sufficient federal funding is provided, or until [Food and Nutrition Service] directs State agencies otherwise," and directing states to "take immediate action to implement this suspension." Dep't of Agric., *Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative*

*Expense Update for November 2025* (Oct. 24, 2025), https://perma.cc/4VPF-4ANN. And in a separate memo issued on the same day, USDA asserted, without any citation or legal support, that SNAP contingency funds were "not available to support FY 2026 regular benefits, because the appropriation for regular benefits no longer exists." Dep't of Agric., *Impact of the Government Lapse on November Supplemental Nutrition Assistance Program (SNAP) Household Benefits*, https://perma.cc/L343-L7YA.

Plaintiffs—a national union whose membership includes SNAP recipients; cities that will divert critical resources to support their SNAP recipient residents; churches and nonprofits that provide emergency food assistance and other critical resources; and food retailers that rely on SNAP purchases—filed this lawsuit on October 30, 2025, alleging in relevant part that Defendants' decision not to fund SNAP benefits violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) & § 706(1), because it was both arbitrary and capricious and contrary to law, and because Defendants unlawfully withheld agency action. Plaintiffs simultaneously moved for a temporary restraining order.

## B. This Court issues an order requiring Defendants to make a full or partial payment of SNAP benefits for November

In an oral order on October 31, 2025, this Court granted Plaintiffs' motion for temporary restraining order. First, the Court found that Plaintiffs have standing to bring their claims as to the suspension of SNAP benefits.[1] TRO Hr'g Tr. at 36:25-37:5. Second, it found that Plaintiffs are likely to succeed on the merits because USDA's letter cutting off SNAP funding is contrary

_____

[1] The Court later specifically noted it was incorporating its oral order and reasoning into its written decision. Order at 3, n.3.

to law and arbitrary and capricious, in violation of the APA. *Id.* at 37:6-15. The Court reasoned that the contingency funds for SNAP are appropriated funds that are necessary to carry out the program's operation, and that USDA provided no explanation as to why the contingency funds could not be used according to previous shutdown-related plans as recent as 2019. *Id.* at 37:16-38:13. Third, the Court found that irreparable harm is beyond argument. *Id.* at 38:14-20. Specifically, irreparable harm will occur "if SNAP benefits are not paid consistent with the mandate from Congress." *Id.* at 38:18-20. Finally, the Court explained, "it's clear that when compared to the millions of people that will go without funds for food versus the agency's desire not to use contingency funds in case there's a hurricane need, the balance[] of those equities clearly goes on the side of ensuring that people are fed." *Id.* at 38:23-39:2. Accordingly, the Court ordered Defendants to distribute the contingency funds as soon as possible. *Id.* at 40:6-8. It further ordered that, if the contingency funds are insufficient to make full SNAP payments for November, Defendants must determine whether they should use other funds to make a full payment and, if they decide not to do so, to "come up with a plan that is not arbitrary and not capricious as a way to distribute the contingency funds to all entitled beneficiaries." *Id.* at 40:12-20. The Court ordered Defendants to submit a report by noon on Monday. *Id.* at 40:8-11.

In a written order issued on November 1, 2025, the Court expanded on its oral order. It emphasized that irreparable harm "exists without timely payment of SNAP benefits." Order at 4-5. It further determined that partial benefits "'would be exceedingly difficult, highly disruptive, and delayed' . . . [and because] Congress created SNAP as an entitlement[,] . . . the Government should, within its discretion, find the additional funds necessary (beyond the contingency funds) to fully fund the November SNAP payments." *Id.* The Court noted that Section 32 of the

Agricultural Adjustment Act amendments of 1935 created a fund that had over $23 billion in it as of October 8, 2025, and which is available for SNAP funding. *Id.* at 5. The Court also explained that if Defendants decided *not* to use their discretion to use available funds to make a full payment of SNAP benefits for November, it "must expeditiously resolve the administrative and clerical burdens it described in its papers, but under no circumstances shall the partial payments be made later than Wednesday, November 5, 2025." *Id.* at 5-6 (citation omitted). The Court further required that a partial funding decision could not be arbitrary or capricious. *Id.* at 5 n.6.

The Court ordered Defendants to "make the full SNAP benefit payments by Monday, November 3, 2025" or to "make a partial payment of the total amount of the contingency funds" two days later. *Id.* at 6.

### C. Defendants decide to partially fund SNAP for November

Defendants chose not to fully fund November SNAP benefits and instead to expend the SNAP contingency funds only. They made this choice while acknowledging that by doing so, these partial payments would not go out by November 5, as the Court ordered, but would be delayed in some states by "a few weeks to up to several months." Suppl. Penn Decl. ¶ 29.

USDA's Deputy Under Secretary of the Food, Nutrition, and Consumer Services (FNCS) Patrick A. Penn submitted a declaration supporting Defendants' decision. He attested that the total amount of remaining contingency funds—$4.65 billion—will cover 50 percent of eligible households' November SNAP benefits. *Id.* ¶ 5.

Deputy Under Secretary Penn also explained that USDA decided not to use an additional $4 billion to fully fund SNAP benefits for November. *Id.* ¶ 7. USDA acknowledged that more

than sufficient funds are available in an account for USDA's Food and Nutrition Service for Child Nutrition Programs, "which are a group of programs that are distinct from SNAP in terms of legal authority, appropriations accounts, and operations." *Id.* ¶ 8. Those programs include the National School Lunch and Breakfast Programs, Summer Food Service Program, and Summer EBT (SUN Bucks). *Id.* ¶ 10.

USDA ultimately determined that those "Child Nutrition Program funds must remain available to protect full operation of Child Nutrition Programs throughout the fiscal year, instead of being used for SNAP benefits." *Id.* ¶ 9. USDA's reasoning was as follows:

- "Using billions of dollars from Child Nutrition for SNAP would leave an unprecedented gap in Child Nutrition funding that Congress has never had to fill with annual appropriations, and USDA cannot predict what Congress will do under these circumstances." *Id.*

- "To make Child Nutrition Programs whole for FY26, Congress would need to appropriate an additional $4 billion in new budget authority. . . . The pending continuing resolution makes no such additional appropriation." *Id.* ¶ 19.

- "While USDA transferred approximately $300 million in October 2025 to support the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), there are key differences. For example, the magnitude of the amounts ($300 million for WIC in October 2025 versus $4 billion for SNAP) is a material consideration." *Id.* ¶ 20

- "While Congress has developed a statutory scheme for providing partial SNAP benefits and, according to the Courts, provided contingency funds at a level it has deemed sufficient, USDA would ignore those provisions while also threatening its ability to administer Child Nutrition Programs if it were to repurpose funds Congress explicitly intended be used only for Child Nutrition Programs." *Id.* ¶ 21.

To be sure, Deputy Under Secretary Penn confirmed that SNAP is in the same bureau as the Child Nutrition Programs and WIC and thus that the funds for Child Nutrition Programs are allowed to be transferred to SNAP. *Id.* ¶ 23. He also attested that there are significant procedural difficulties for States to administer a reduced SNAP benefits program for November, which

"could lead to payment errors and significant delays." *Id.* ¶ 28. Further, "[f]or at least some states, USDA's understanding is that the system changes States must implement to provide the reduced benefit amounts will take anywhere from a few weeks to up to several months." *Id.* ¶ 29.

**D. The partial funding of SNAP benefits causes Plaintiffs irreparable harm**

As outlined below, and as described in Plaintiffs' first motion for a restraining order filed on October 30, 2025, ECF No. 3-1, reduced benefits and the associated significant delays to which USDA attests will continue to cause the same serious and irreparable harm to Plaintiffs, their members and constituents, and many others.

Most urgently, 42 million Americans will receive only partial SNAP benefits, and will do so on an unnecessarily delayed timeline. Among these SNAP recipients are individual members of Plaintiff SEIU, who rely on SNAP benefits to feed themselves and their families—even though they work part-time or full-time jobs. *See* Ex. 1, Suppl. Decl. of Elena Medina, Attach. A-C. For example, one SEIU member, who has a seasonal job at a Halloween costume store in North Carolina, attested that "[p]artial payments will not cover the food [her] kids need for the entire month" and that "[c]utting and/or delaying [her] SNAP benefits puts [her] kids' health in jeopardy," as food banks and doctor's offices are unable to adequately provide the kind of food that they need. *Id.*, Attach. A ¶¶ 4, 6. Another, who works as a hair stylist in Georgia, attested that she already used the last of her October SNAP benefits on October 27, 2025, to purchase essential foods for her son and that she is barely able to pay for essential household costs like transportation as it is. *Id.*, Attach. B ¶¶ 6, 7. And a third, who works as an airport cabin cleaner in Massachusetts, attested that he did not receive his benefits as scheduled on November 1, 2025,

and that, "[a]s a result of the reduced benefits, [he] will be forced to limit [his] meals to twice a day instead of three times a day in order to stretch [his] limited resources." *Id.*, Attach. C ¶ 3.

Likewise, many of the nonprofit Plaintiffs offer direct food assistance to low-income clients, many of whom rely on both SNAP benefits and Plaintiffs' food pantry services to meet their basic nutritional needs. Fernandez Decl. ¶¶ 6, 7, ECF No. 3-11; Feyisitan Decl. ¶¶ 6, 7, ECF No. 3-10; Strout Decl. ¶¶ 6, 7, ECF No. 3-9; Piekarski Decl. ¶ 5, ECF No. 3-12; Langill Decl. ¶¶ 7, 8, ECF No. 3-2; Yentel Decl. ¶ 11, ECF No. 3-3. These nonprofits provide emergency food assistance as a core function of their individual missions, and they will face direct and serious harm if SNAP benefits continue to be delayed and reduced. Fernandez Decl. ¶¶ 4, 25; Feyisitan Decl. ¶¶ 5, 25; Strout Decl. ¶¶ 3, 21; Piekarski Decl. ¶¶ 5, 6, 15, 19; Langill Decl. ¶¶ 3, 26; Yentel Decl. ¶¶ 15, 17.

Plaintiff NYLAG serves clients who are experiencing barriers to accessing and maintaining public benefits, including SNAP, and expects to be inundated with requests from those whose SNAP benefits are delayed or reduced. *See* Biberman Decl. ¶¶ 5, 7, 9, 17, ECF No. 3-15. NYLAG's clients rely on the delivery of SNAP each month to meet their basic subsistence needs. *Id.* When clients do not receive their full benefits for November and do not understand why, they will reach out to NYLAG in unprecedented numbers. *Id.*

City Plaintiffs, too, will be irreparably harmed by the delay and reduction of SNAP benefits for their most vulnerable residents. *See generally* Rivera Decl., ECF No. 3-4; Grebien Decl., ECF No. 3-5; Hawkins Decl., ECF No. 3-6; Dzirasa Decl., ECF No. 3-7; Long Decl., ECF No. 4; Elicker Decl., ECF No. 3-8. They have already taken steps to divert resources from core

city services to feed their communities, and they will continue to do so for as long as payments are delayed and reduced. Rivera Decl. ¶¶ 18-20; Long Decl. ¶¶ 11, 17.

Finally, the delay and reduction of benefits will have devastating impacts on the local economy and small businesses like Plaintiff Black Sheep Market. As just one example, Plaintiff Black Sheep Market stands to lose the 40 percent of its revenue that is currently fulfilled by SNAP transactions every week that SNAP funding is delayed, and up to half of that revenue even after reduced payments go out. Cheatham Decl. ¶ 12, ECF No. 3-14. It will not be able to recoup that money and, in the meantime, also risks damaging its relationships with food suppliers and community partners, as well as its ability to offer full work schedules to its twelve employees. *Id.* ¶ 13.

These stories just scratch the surface of the instability and irreparable harm created by Defendants' continued actions. The harms to each and every Plaintiff described above will be irreparable if SNAP benefits continue to be delayed and reduced. Each day that SNAP benefits are not released or are not fully funded, more Americans like SEIU's SNAP recipient members will go hungry, more resources will be diverted from nonprofit and city Plaintiffs' other critical programs, more unrecoverable revenue will be lost for small business Plaintiffs, and more damage will be done to each Plaintiff's ability to fulfill their missions of supporting their communities.

## ARGUMENT

### I.    The Court Should Enter a Further Order Enforcing the TRO

The Court's order found that irreparable harm would arise absent "timely payment" of SNAP benefits and accordingly gave Defendants two options: (1) They could make full payment

by Monday, November 3, or (2) they could "expeditiously resolve the administrative and clerical burdens" associated with partial payments and make such payments just two days later than it anticipated they would be able to make full payments, by Wednesday, November 5. Order at 4-5. Defendants chose to provide partial payments—but failed to resolve the associated "administrative and clerical burdens" as the Court's order requires. *Id.* at 5. As the government admits in its supplemental declaration describing its decision, the burdens that partial payments entail are so severe that, for some states, implementation will take up to "several months." Suppl. Penn Decl. ¶ 29. Defendants have not resolved the burdens of partial payment—let alone expeditiously. Nor, according to their declaration, have they made any effort to do so. And providing for partial payments that, for some states, will not go out to people for months does nothing to "alleviate the irreparable harm that the Court found exists without timely payment of SNAP benefits," Order at 4-5.

If Defendants cannot comply with the Court's command to expeditiously resolve the hurdles to making "timely" partial payments, then that is a problem of their own making. If they were not going to provide full funding, they could have begun working to resolve the administrative hurdles once the lapse in appropriations occurred, or even before.[2] Instead, they chose—unlawfully and contrary to past agency precedent and guidance—to withhold all funding for SNAP. That this unlawful decision may have made it impossible for them to clear the administrative hurdles now is no excuse. They still have a straightforward path to meeting the directives in the Court's order—and "to fulfill[ing] the statute['s] designation of SNAP as an

---

[2] During the first Trump administration, USDA set in motion its plan for funding SNAP during a government shutdown early. *See* Letter from Jessica Shahin to FNS Regions, Early Issuance of February 2019 SNAP Benefits (Jan. 14, 2019), https://perma.cc/ED49-ZBK8.

11

entitlement": They can provide full payments if that is all that is administratively feasible to get needed food assistance to people in time to prevent irreparable harm.

Defendants also transgressed the Court's command that any decision by the agency not to provide full funding "must be made in accordance with the Administrative Procedure Act and cannot be arbitrary or capricious." Order at 5 n.6. For the reasons explained further below, Defendants' decision not to provide full funding was arbitrary and capricious—including because it is based on the false premise that drawing on other available funds will leave child nutrition programs underfunded and because Defendants failed to account for the significant harm that would result from partial payments that will not actually reach individuals and families needing food for months. *See infra* Section II.B.

For these reasons, the Court should enforce the TRO by entering a further order requiring Defendants to release the funding needed for full payments immediately.

## II.    In the Alternative, the Court Should Enter a New TRO on the Ground that the Decision Not to Fully Fund November SNAP Benefits Is Arbitrary and Capricious

In the alternative, the Court should enter a new TRO on the ground that Defendants violated the APA in choosing not to fully fund November SNAP benefits. That decision is reviewable agency action that must be set aside as arbitrary and capricious.[3]

### A.  USDA's refusal to provide full funding is subject to judicial review

As an initial matter, Defendants' refusal to provide full funding is subject to review under the APA. For one, it is "final agency action," 5 U.S.C. § 704. The decision not to fully fund November SNAP benefits is final agency action for the same reason that Defendants' initial

---

[3] If the Court prefers, Plaintiffs stand ready to supplement their complaint to specifically include this new agency action that stems from the initial nonfunding decisions that Plaintiffs brought this lawsuit to challenge.

decision not to fund SNAP benefits at all was final agency action. *See* Pls.' TRO Br. at 28-29,
ECF No. 3-1.

In addition, and contrary to Defendants' assertion at the October 31 hearing, *see* TRO
Hr'g Tr. at 9:21-22, the decision whether to fully fund November benefits is not "committed to
agency discretion by law," 5 U.S.C. § 701(a)(2). Even where an agency is afforded broad
discretion, the APA embodies a "strong presumption of judicial review." *Marasco & Nesselbush
LLP v. Collins*, 6 F.4th 150, 170 (1st Cir. 2021); *see Weyerhaeuser Co. v. U.S. Fish & Wildlife
Serv.*, 586 U.S. 9, 23 (2018). The APA's exception for actions "committed to agency discretion
by law," 5 U.S.C. § 701(a)(2), is "quite narrow[], restrict[ed] ... to those rare circumstances
where the relevant statute is drawn so that a court would have no meaningful standard against
which to judge the agency's exercise of discretion," *Department of Commerce v. New York*, 588
U.S. 752, 772 (2019) (quotation marks omitted). This case does not clear that high bar.
Congress's instruction that SNAP assistance "shall be furnished to all eligible households who
make application for such participation," 7 U.S.C. § 2014(a), provides a "clear and specific
directive[]" that requires USDA to fund SNAP in full when funds are available, as they are here,
*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971), *abrogated on other
grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also* Order at 4. And Congress
identified purposes for which Child Nutrition Program funds "shall be available" for transfer to
other programs, including SNAP. 7 U.S.C. § 2257. These provisions "cabin [USDA's]
discretion" to withhold SNAP funding and provide "meaningful standard[s] by which to judge
the [agency]'s action." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025); *see
also Mach Mining LLC v. EEOC*, 575 U.S. 480, 487-488 (2015) (EEOC's wide latitude over

Title VII conciliation process would not preclude review of an outright failure to attempt conciliation at all).

*Lincoln v. Vigil*, 508 U.S. 182 (1993), is readily distinguishable. There, the Indian Health Service's (IHS) termination of the Indian Children's Program could not be reviewed under the APA because the decision about how to allocate funds from the agency's annual lump-sum appropriation was committed to the IHS's unreviewable discretion. *Id.* at 191-195. Unlike in this case, the relevant appropriations measures in *Lincoln* "d[id] not so much as mention" the terminated program, and the IHS's authorizing statutes "sp[oke] about Indian health only in general terms" without obligating the agency to undertake any particular program. *Id.* at 194. And unlike in this case, the appropriations at issue were unitemized lump sums allocated for the broad purpose of funding the IHS as a whole for the general "benefit, care, and assistance of the Indians, for the relief of distress and conservation of health." *Id.* at 185 (quotation marks omitted). Congress did not "statutorily restrict[] what c[ould] be done with those funds" at all, *id.* at 192, let alone dictate—as it did here—that funds be used to provide food assistance to all eligible applicants. Here, in contrast, Congress established SNAP as an entitlement and established that funds could be transferred from the Child Nutrition Program funds under § 2257 if necessary to fulfill that obligation. Those directives provide meaningful standards to apply in determining whether Defendants have carried out their statutory obligations and reasonably considered all relevant factors. *See Citizens to Pres. Overton Park*, 401 U.S. at 411-413; *Weyerhaeuser Co.*, 586 U.S. at 25.[4] USDA's refusal to provide full SNAP benefits is thus subject to APA review, and as explained below, it fails.

_____

[4] In *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), Congress directed the agency to use certain funds "to provide assistance directly to ... dairy producers, in a manner determined appropriate by the Secretary." *Id.* at 751. In holding that the agency's determination of the

**B. Defendants' decision to withhold full benefits is arbitrary and capricious**

Agency actions are arbitrary and capricious if they are "not 'reasonable and reasonably explained,'" and must be set aside. *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). To pass arbitrary-and-capricious review, an agency must offer "a satisfactory explanation for its action," including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). The agency cannot "rel[y] on factors which Congress has not intended it to consider," ignore "an important aspect of the problem," nor "offer[] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* And to assess how reasonable an agency's explanation for its action actually is, "the Court must look to 'the grounds that the agency invoked when it took the action.'" *New York v. Kennedy*, 789 F. Supp. 3d 174, 205 (D.R.I. 2015) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). Further, "[a] substantive unreasonableness claim ordinarily is an argument that, given the facts, the agency exercised its discretion unreasonably," which "generally means that, on remand, the agency must exercise its discretion differently and reach a different bottom-line decision." *Multicultural Media, Telecom & Internet Council v. Fed. Commc'ns Comm'n*, 873 F.3d 932, 936 (D.C. Cir. 2017) (Kavanaugh, J.).

Defendants' refusal to fully fund November benefits is arbitrary and capricious for at least four independent reasons.

---

"appropriate" "manner" in which to provide assistance was committed to the agency's unreviewable discretion, the court did not suggest that the agency could refuse to use the funds to provide assistance to dairy producers altogether; indeed, it was uncontested that—unlike here— the Secretary had fulfilled that statutory mandate. *Id.* at 752.

### 1. *Defendants failed to account for the practical consequences of partial funding*

USDA's decision not to provide full SNAP benefits is arbitrary and capricious because the agency failed to account for the practical consequences that it previously warned would result. By Defendants' own telling, the route they have chosen will "lead to chaos and uncertainty," "could potentially delay months of future benefits," and "might fail entirely." Defs.' Opp. at 2, 16, ECF No. 14-1. In opposing Plaintiffs' initial request for emergency relief, Defendants argued that they could not use the contingency fund to partially fund SNAP because of these significant logistical and operational difficulties. *Id.* at 15-16; *see also* First Penn Decl. ¶ 23, ECF No. 14-2 (asserting that "there are multiple variables which could lead to significant problems in attempting to reduce benefits for every SNAP household in the country"); TRO Hr'g Tr. at 21:13-16 (Defendants' counsel suggesting that providing partial benefits "could actually cause immense harm to the SNAP system itself").

Defendants' new declaration reiterates these difficulties. Suppl. Penn Decl. ¶¶ 24-30. The declaration asserts that, because of the decision to implement reduced benefits rather than full benefits, states will likely experience "procedural difficulties" that "would affect November SNAP benefits reaching households in a timely manner." *Id.* ¶ 24. The declaration explains that, for some states, the necessary changes will take "anywhere from a few weeks to up to several months." *Id.* ¶ 29.

Despite all these issues, USDA has elected to provide only reduced benefits for November. The agency failed to account for the practical concerns it previously emphasized or associated reliance interests. While the agency acknowledged "procedural difficulties" in processing partial benefits, Suppl. Penn Decl. ¶ 22, it failed to account for the human cost of that benign-sounding phrase, namely the immense harm to beneficiaries who will go without food

16

assistance during potentially lengthy delays. Nor did it consider the impact on organizations and cities that rely on SNAP to provide emergency food assistance in their communities. The agency thus failed to account for an "important aspect of the problem." *State Farm*, 463 U.S. at 43. And the failure to "consider[] potential reliance interests," standing alone, renders agency action arbitrary and capricious. *DHS v. Regents of Univ. of California*, 591 U.S. 1, 30 (2020).

As the Court has recognized, all these issues could be avoided if Defendants simply exercised their transfer authority—which they concede they could do—to provide full benefits for the month of November. TRO Hr'g Tr. at 10:1-11:17; *see* Suppl. Penn Decl. ¶ 23. Defendants' decision not to do so, despite their knowledge that it is likely to result in vital food assistance being not just cut but also significantly delayed, is arbitrary and capricious.

### 2. *Defendants' reasoning misapprehends USDA's statutory authority and Congress's intent*

USDA's refusal to provide full SNAP payments for November is arbitrary and capricious for the further reason that it rests on a flawed understanding of USDA's statutory authority and Congress's intent. Agency action that is premised on such a legal error is arbitrary and capricious and must be set aside. *Doe v. Noem*, 152 F.4th 272, 287 (1st Cir. 2025); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[A]n order may not stand if the agency has misconceived the law.").

USDA's refusal to provide full funding rests heavily on the assumption that Child Nutrition Program funds, derived from Section 32 and other appropriations, "are not a contingency fund for SNAP." Suppl. Penn Decl. ¶ 9. Although USDA has authority under 7 U.S.C. § 2257 to use a percentage of those funds "interchangeably" for SNAP payments, USDA nevertheless reasoned that it would not draw on those funds because Congress allegedly intended to restrict their use only to Child Nutrition Programs. *Id.* ¶¶ 12, 21. USDA accordingly refused to

draw on those funds in large part because it concluded that doing so would violate congressional intent. *Id.* ¶¶ 9, 12, 21.

But Congress made its intent clear: as this Court has already recognized, "Congress created SNAP as an entitlement." Order. ¶ 3. Congress explicitly directed that SNAP assistance "shall be furnished to all eligible households who make application for such participation." 7 U.S.C. § 2014(a). And it explicitly permitted USDA to draw on a percentage of Child Nutrition Program funds to fulfill that obligation, expressing its clear intent that those funds should be available to meet other needs as emergencies arise. *Id.* § 2257. USDA's assumption that it should not use those funds here because doing so would "stray from Congressional intent," Suppl. Penn Decl. ¶ 21, is thus irreconcilable with what Congress has actually said it intended. And it is irreconcilable with Defendants' own concession that using those funds would be permissible, TRO Hr'g Tr. at 10:1-4, and with USDA's recent transfer of some of those funds away from Child Nutrition Programs under § 2257 to fund the WIC program during the shutdown, *see* Pls.' TRO Br. at 30. By placing a thumb on the scale against fully funding November SNAP benefits based on this distorted view of congressional intent, USDA's reasoning is infected with legal error and thus arbitrary and capricious.

### 3. *The claimed need to conserve funds for child nutrition is implausible and contrary to the evidence*

Defendants also act arbitrarily and capriciously in claiming that they have chosen not to fully fund November SNAP benefits because that would leave "Child Nutrition Programs … with an unprecedented and significant shortfall." Suppl. Penn Decl. ¶ 16. For at least two reasons, that explanation "runs counter to the evidence before the agency" and "is so implausible that it could not be ascribed to a difference in view," *State Farm*, 463 U.S. at 43.

18

First, even if the current lapse in appropriations continued, funding for child nutrition programs would not in fact face any shortfall now—or even anytime soon. There is currently approximately $23.35 billion available in the child nutrition account.[5] In the government's own telling, child nutrition programs require just over $3 billion per month (or approximately $36.27 billion total this fiscal year). *See* Suppl. Penn Decl. ¶ 15. If the government transferred the $4 billion necessary to make full November SNAP payments, $19.35 billion would remain—enough to fully fund child nutrition through May and beyond, even if the current lapse in appropriations lasted that long. There is no realistic risk of any child going hungry as a result of such transfer—but a very real and immediate risk of 16 million children not getting the sustenance they need if USDA does not fully fund November SNAP benefits. *See* Dep't of Agric., *Characteristics of SNAP Households: Fiscal Year 2023* (May 2, 2025), https://perma.cc/RN8A-YD8R (noting that 39 percent of SNAP recipients are children).

Second, Defendants incorrectly claim that a transfer out of the child nutrition account "would be a permanent loss" to those programs for all of this fiscal year. Suppl. Penn Decl. ¶ 17. That is misleading at best. It would be a "permanent loss" if and only if Congress entirely failed to pass an appropriations bill or continuing resolution for fiscal year 2026. That would be

---

[5] The account for child nutrition programs started this fiscal year with $23 billion from "Section 32" funds derived from customs receipts, Suppl. Penn Decl. ¶ 15, plus an additional $7 billion in funds carried over from the prior year's appropriation, OpenOMB, *State Child Nutrition Programs: File No. 11478839* (last visited Nov. 3, 2025), https://perma.cc/CW4G-QR7C. USDA has since spent $6.65 billion of that—$6.2 billion on child nutrition for October and November and an additional $450 million for WIC at the end of October. *See* First Penn Decl. ¶ 32; OpenOMB, *State Child Nutrition Programs: File No. 11481439* (last visited Nov. 3, 2025), https://perma.cc/4GUU-BS4W; OpenOMB, Special Supplemental Nutrition Program for Women, Infants, and C (last visited Nov. 3, 2025), https://perma.cc/NJ59-U99R. That leaves $23.35 billion currently.

unprecedented, and Defendants act arbitrarily and capriciously by basing their decision on such an unlikely possibility.

Apparently recognizing the implausibility of such an extended funding lapse, Defendants also claim that, even if Congress funds the government, the $4 billion "gap" in child nutrition funds caused by the transfer to SNAP "would *not* be filled." *Id.* ¶ 18. That is flatly incorrect. To begin, that assumes that the administration would not seek and Congress would not take special action to fill any gap—unlikely, given that Congress, with bipartisan support, has always fully funded child nutrition. But even if Congress took no special action, the gap would still be filled. Amounts appropriated for SNAP could be transferred to the child nutrition account to effectively reimburse it for the amounts that account covered. 7 U.S.C. § 2257; Suppl. Penn Decl. ¶ 23. In particular, if Congress passed a standard continuing resolution or an annual appropriations bill in line with the administration's budget request, that would include funding for the period of the shutdown—including the amounts needed for November SNAP payments. But USDA would not actually need the money for November payments—they'd have already made those with other funds—and so could transfer unneeded amounts back to the child nutrition account.

Transferring money from the child nutrition account does not take any needed money away from those programs now or even create any realistic risk that insufficient funds will be available for school lunches or other child nutrition programs later on. Defendants' decision not to tap those funds—and to instead make only partial payments that will in some cases take states months to get out to hungry families—to save them up for child nutrition is "so implausible that it could not be ascribed to a difference in view," *State Farm*, 463 U.S. at 43.

#### 4.  *Defendants are arbitrarily and capriciously withholding SNAP funding for partisan political advantage*

Additionally, the agency's decision is arbitrary and capricious because the evidence shows that, in fact, USDA is withholding full benefits not to conserve funds for other use, but for partisan political purposes. In particular, USDA is prominently blaming "Senate Democrats" for the interruption in SNAP benefits. A banner on the agency's website states:

> Senate Democrats have now voted 12 times to not fund the food stamp program, also known as the Supplemental Nutrition Assistance Program (SNAP). Bottom line, the well has run dry. At this time, there will be no benefits issued November 01. We are approaching an inflection point for Senate Democrats. They can continue to hold out for healthcare for illegal aliens and gender mutilation procedures or reopen the government so mothers, babies, and the most vulnerable among us can receive critical nutrition assistance.

Dep't of Agric., https://perma.cc/BL88-8QU6. This banner makes clear that instead of providing vital benefits, in full, to millions of Americans, USDA is using the SNAP program as a political tool amid the current government shutdown. That "kind of partisan motivation exemplifies arbitrary and capricious agency action." *AFSCME, AFL-CIO v. OMB*, No. 25-CV-08302, 2025 WL 3018250, at *18 (N.D. Cal. Oct. 28, 2025).

Defendants' true political motivations are further illustrated by the evidence showing that their stated reason—a desire to conserve funding for child nutrition—is pretextual. This rationale is facially implausible for the reasons explained in section II.B.3 above. Courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com.*, 588 U.S. at 785 (citation omitted). This record shows that USDA's true reasons for withholding full SNAP benefits are to gain partisan advantage—and that is arbitrary and capricious.

### C.  The remaining factors favor immediate temporary relief

Plaintiffs have established that irreparable harm is likely without preliminary relief, that the balance of equities tips in Plaintiffs' favor, and that a preliminary injunction is in the public

interest for the same reasons that supported their original motion. *See* Pls.' TRO Br. at 36-40.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because of Defendants' decision to

withhold full funds for November SNAP benefits, Plaintiffs' members and constituents, and

millions of other Americans, will continue to go hungry as their benefits are delayed and

reduced. *See supra* Background section D. As this Court has already recognized, "[t]here is no

doubt and it is beyond argument that irreparable harm will begin to occur, if it hasn't already

occurred, in the terror it has caused some people about the availability of funding for food for

their family, that irreparable harm will occur if this injunction does not pass and if SNAP

benefits are not paid consistent with the mandate from Congress." TRO Hr'g Tr. at 38:14-20.

Likewise, "it's clear that when compared to the millions of people that will go without funds for

food versus the agency's desire not to use [] funds" in case those funds are needed to support

other programs much later if the shutdown drags on for months, "the balance[] of those equities

clearly goes on the side of ensuring that people are fed." *Id.* at 38:23-39:2. Immediate temporary

relief is again necessary to protect the SNAP benefits that are so vital to Plaintiffs, their

members, and the public interest.

***

As the foregoing shows, Defendants' decision was not just unreasonably explained, but

also substantively unreasonable. *Multicultural Media, Telecom & Internet Council*, 873 F.3d at

936 ("A decision that the agency's action was substantively unreasonable generally means that,

on remand, the agency must exercise its discretion differently and reach a different bottom-line

decision."). Accordingly, and given the urgency of the harm being suffered, Defendants' plan

cannot be made lawful with additional explanation. Plaintiffs respectfully request that the Court

preliminarily set aside Defendants' decision not to provide full funding for November SNAP

22

benefits pursuant to 5 U.S.C. § 705 and compel the agency to return to the status quo ante of fully funding SNAP benefits. They further request that the Court temporarily enjoin Defendants from enforcing or giving effect to that decision. For the same reasons the Court previously found, given the geographic diversity of Plaintiffs and their membership as well as the injuries certain Plaintiffs suffer from the elimination of SNAP in their communities, a limited order would not provide complete relief. Order at 2, n.2 (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 853-54 (2025)).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to enforce or for alternative relief as set out in Plaintiffs' motion.

November 4, 2025                                   Respectfully submitted,

                                                   */s/ Kristin Bateman*
                                                   Kristin Bateman (D.C. Bar No. 90037068)^
                                                   Jyoti Jasrasaria (D.C. Bar No. 1671527)^
                                                   Michael J. Torcello (D.C. Bar No. 90014480)^
                                                   Andrew Bookbinder (D.C. Bar No. 90028967)^
                                                   Adnan Perwez (D.C. Bar No. 90027532)^
                                                   Robin F. Thurston (D.C. Bar No. 1531399)^
                                                   Skye L. Perryman (D.C. Bar No. 984573)^
                                                   Democracy Forward Foundation
                                                   P.O. Box 34553
                                                   Washington, D.C. 20043
                                                   (202) 448-9090
                                                   kbateman@democracyforward.org
                                                   jjasrasaria@democracyforward.org
                                                   mtorcello@democracyforward.org
                                                   abookbinder@democracyforward.org
                                                   aperwez@democracyforward.org
                                                   rthurston@democracyforward.org
                                                   sperryman@democracyforward.org

                                                   */s/ Amy R. Romero*
                                                   Amy R. Romero (RI Bar # 8262)
                                                   Kevin Love Hubbard (MA Bar #704772)^
                                                   DeLuca, Weizenbaum, Barry & Revens, Ltd.

199 North Main Street
Providence, RI 02903
(401) 453-1500
Amy@dwbrlaw.com
Kevin@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI


*Counsel for Plaintiffs*

^ Admitted *pro hac vice*