# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| RHODE ISLAND STATE COUNCIL OF CHURCHES; NATIONAL COUNCIL OF NONPROFITS; SERVICE EMPLOYEES INTERNATIONAL UNION; MAIN STREET ALLIANCE; CITY OF CENTRAL FALLS; CITY OF PAWTUCKET; CITY OF PROVIDENCE; CITY OF ALBUQUERQUE; CITY OF BALTIMORE; CITY OF COLUMBUS; CITY OF DURHAM; CITY OF NEW HAVEN; AMOS HOUSE; DR. MARTIN LUTHER KING, JR. COMMUNITY CENTER; EAST BAY COMMUNITY ACTION PROGRAM; FEDERAL HILL HOUSE ASSOCIATION; THE MILAGROS PROJECT; UNITED WAY OF RHODE ISLAND; NEW YORK LEGAL ASSISTANCE GROUP; BLACK SHEEP MARKET, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 25-cv-569-JJM-AEM |
|     Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| BROOKE ROLLINS, in her official capacity as Secretary of the United States Department of Agriculture; UNITED STATES DEPARTMENT OF AGRICULTURE; RUSSELL VOUGHT, in his official capacity as Director of the United States Office of Management and Budget; UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; SCOTT BESSENT, in his official capacity as Secretary of the United States Department of the Treasury; UNITED STATES | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

DEPARTMENT OF THE TREASURY;  )
UNITED STATES OF AMERICA,  )
  Defendants.  )
           )

## MEMORANDUM AND ORDER

Before the Court is the Plaintiffs' Motion for Enforcement of the Temporary Restraining Order ("TRO") or, in the alternative, a Motion for a new TRO and preliminary stay.  ECF No. 22.

It is estimated that 42 million individuals, approximately 1 in 8 Americans, rely on the Supplemental Nutrition Assistance Program ("SNAP").  This includes 14 million children, 8 million elderly people, and 1.2 million veterans.  A core mission of the United States Department of Agriculture ("USDA") is to ensure that America's children are properly nourished, yet their decision to not feed hungry Americans through SNAP leaves this Court to address the issues the agency has failed to resolve. While the President of the United States professes a commitment to helping those it serves, the government's actions tell a different story.  Faced with a choice between advancing relief and entrenching delay, it chose the latter—an outcome that predictably magnifies harm and undermines the very purpose of the program it administers.  Such conduct is more than poor judgment; it is arbitrary and capricious. One cannot champion the public interest while simultaneously adopting policies that frustrate it.  Discretion exercised in this manner ceases to be discretion at all—it becomes obstruction cloaked in administrative formality.  Accordingly, intervention

is not only warranted but necessary to restore coherence, accountability, and fidelity to the law's intent.

Therefore, based on these principles and the reasons stated below, the Court GRANTS the Plaintiffs' Motion for Enforcement, and the Court is issuing a second TRO, requiring the full payment of SNAP benefits to be made immediately.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case already has an unusually lengthy factual and procedural history in the short time since it was filed.  As such, the Court begins with a brief recounting of that history.

In the Consolidated Appropriations Act of 2024, Congress appropriated more than $122 billion "[f]or necessary expenses to carry out" the SNAP program and, of that sum, directed that $3 billion, "to remain available through September 30, 2026, shall be placed in reserve for use only in such amounts and at such times as may become necessary to carry out program operations."  Pub. L. No. 118-42, 138 Stat. 25, 93.  Congress maintained those funding levels for the SNAP program in the Full-Year Continuing Appropriations and Extensions Act of 2025, meaning that an additional $3 billion was put aside in a reserve available through September 30, 2027.  Pub. L. No. 119-4, 139 Stat. 9, 13.   Collectively, these funds amount to $6 billion in appropriated funds for SNAP (referred to here as "contingency funds").

On October 1, 2025, when Congress failed to pass appropriations legislation for Fiscal Year 2026, the United States entered a "government shutdown."  On October 10, 2025, in response to the shutdown, USDA announced its intention to

continue funding the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"). Marcia Brown, *USDA Tells Lawmakers WIC Will Be Funded Through October*, Politico (Oct. 10, 2025, 11:30 AM ET), https://perma.cc/74PN-7R2F. To do so, the agency stated that it would be using money from a fund created by Section 32 of the Agricultural Adjustment Act of 1935, 7 U.S.C. 612c (referred to here as the "Section 32 Fund"). *Id.* As of October 9, 2025, there are over $23 billion in this fund. *See* OpenOMB, State Child Nutrition Programs, https://perma.cc/39Y3-4K9F.

Meanwhile, on the same day, USDA issued a memo (i.e., "October 10th Memo") informing state officials that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits for approximately 42 million individuals across the Nation." Memorandum from U.S. Dep't of Agric., Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025 (Oct. 10, 2025), https://perma.cc/LDG4-DQMC. A few weeks later, on October 24, 2025, USDA issued another memo (i.e., "October 24th Memo") stating that, effective November 1, 2025, it would be "suspending all November 2025 benefit allotments until such time as sufficient federal funding is provided, or until [Food and Nutrition Service] directs State agencies otherwise." Memorandum from U.S. Dep't of Agric., Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025 (Oct. 24, 2025). The memo further directed states to "take immediate action to implement this suspension." *Id.*

In a separate memo issued the same day, USDA asserted that SNAP contingency funds were "not available to support FY 2026 regular benefits, because the appropriation for regular benefits no longer exists."  Memorandum from U.S. Dep't of Agric., Impact of the Government Lapse on November Supplemental Nutrition Assistance Program (SNAP) Household Benefits, https://perma.cc/L343-L7YA.  On or about October 27, 2025, USDA posted in a prominent banner on its website that "the well has run dry" for SNAP benefits, and that "Senate Democrats" were to blame for not voting to "reopen the government so mothers, babies, and the most vulnerable among us can receive critical nutrition assistance."  U.S. Dep't of Agric., https://perma.cc/BL88-8QU6 (retrieved on Oct. 27, 2025).  The banner further stated that "there will be no benefits issued November 01."  *Id.*

On October 30, 2025, a group composed of cities, unions, and nonprofits from across the country (collectively, "the Plaintiffs") brought this action, seeking a TRO compelling USDA to disburse funds to be used for the SNAP program.  *See* ECF No. 1.  The Plaintiffs argued that contrary to USDA's claim that "the well has run dry," the agency had two revenue sources from which it could pull to fund SNAP: (1) the approximately $6 billion in contingency funds; and (2) the approximately $23 billion in the Section 32 funds.  *Id.* at 38-39.  They further argued that the agency's decision not to fund SNAP violated the Administrative Procedure Act ("APA").  *Id.* at 33-38.

On October 31, 2025, this Court held a virtual hearing in which it granted the Plaintiffs' request for a TRO.  ECF No. 25 (TRO Hr'g Tr.).  Specifically, the Court found that Plaintiffs were substantially likely to succeed on the merits of their APA

claim because the USDA's decision to cut off SNAP funding was contrary to law and arbitrary and capricious. The Court reasoned that the contingency funds for SNAP are appropriated funds that are necessary to carry out the program's operation, and that USDA provided no explanation as to why the contingency funds could not be used even though the agency had previously acknowledged in 2019, during the first Trump administration, that such funds could be used during a government shutdown.[1] The Court further found that irreparable harm would occur if millions of people were forced to go without funds for food, and it held that the balance of equities and the public interest weighed in favor of the Plaintiffs. Accordingly, the Court orally ordered the Defendants to distribute funds to SNAP beneficiaries as soon as possible, and to submit a report by 12 PM on November 3, 2025, as to how it planned to comply with the Court's order.

Following the hearing, the Defendants filed a motion in which they requested that the Court reduce its TRO to writing because they were "expeditiously attempting to comply with the Court's order." ECF No. 18 at 2. That same day, President Trump stated that:

> I do not want Americans to go hungry . . . [I] ask the Court to clarify how we can legally fund SNAP as soon as possible. . . . If we are given the appropriate legal direction by the Court, it will BE MY HONOR to provide the funding. . . .

---

[1] This acknowledgement came in the form of guidance issued by a senior USDA official to regional SNAP program administrators. *See* Letter from Jessica Shahin to FNS Regions, Early Issuance of February 2019 SNAP Benefits (Jan. 14, 2019), https://perma.cc/ED49-ZBK8.

ECF No. 19 at 2 (quoting Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 31, 2025, at 6:10 PM)).

On November 1, 2025, this Court issued that requested legal direction.  ECF No. 19.  It explicitly provided the Defendants with two options to address the irreparable harm wrought by a lapse in funding for the SNAP program.  First, the Defendants could, within their discretion, use Section 32 funds, contingency funds, or both to fully fund November SNAP benefits by Monday, November 3, 2025.  *Id.* at 6.  If they chose not to provide full funding, their decision had to "be made in accordance with the APA" and could not be "arbitrary or capricious."  *Id.* at 5 n.6.  Second, the Defendants could use contingency funds to make a partial payment of SNAP benefits by Wednesday, November 5, 2025.  *Id.* at 6.  If the Defendants chose this option, then they would have had to "expeditiously resolve the administrative and clerical burdens" associated with making partial payments.  *Id.* at 5-6.

On November 3, 2025, the Defendants filed a status report in which they indicated that they would be proceeding with the second option.  ECF No. 21. Specifically, the Defendants stated that they would partially fund SNAP by using $4.65 billion in contingency funds[2] to cover 50% of the benefits due to each SNAP

---

[2] As the Defendants explain, at the beginning of Fiscal Year 2026, there was a total of $6 billion in SNAP contingency funds.  ECF No. 21-1 at 2.  The Food and Nutrition Service ("FNS") used $450 million from those funds for SNAP State agencies' administrative expenses and an additional $300 million for the Nutrition Assistance Program ("NAP") block grants for Puerto Rico and American Samoa.  *Id.* According to the Defendants, this will leave $4.65 billion in contingency funds for November SNAP benefits.  *Id.*  However, the Court ran the numbers, and this leaves $5.25 billion remaining in contingency funds—not $4.65 billion.  The Defendants do not explain this $600 million discrepancy.

recipient for the month of November. ECF No. 21-1 at 2. However, a senior USDA official claimed that issuance of these partial payments could "take anywhere from a few weeks to up to several months" due to "procedural difficulties." *Id.* at 7, 8. According to the Defendants, USDA has never had to issue partial SNAP benefits before, and that such an action involves "massive" and "novel system changes" filled with "procedural difficulties that States will likely experience which would affect November SNAP benefits reaching households in a timely manner and in the correctly reduced amounts." *Id.* at 7. These difficulties include: (1) State agencies having to recode their eligibility systems to "adjust for the reduced maximum allotments"; (2) States having to reduce benefits within their systems, either through "an automated manner with minimal disruption versus manual overrides or computations that could lead to payment errors and significant delays"; (3) States having to "handle any requests for fair hearings from SNAP households related to the reduction." *Id.* at 7-8.

Also in their status report, the Defendants state that "USDA has determined not to use Section 32 Child Nutrition Program funds or other funds to provide full SNAP payments for the month of November." ECF No. 21 at 3. Their reasoning behind electing not to fully fund the program was that doing so: (1) "stray[s] from Congressional intent" that Section 32 funds "be used only for Child Nutrition Programs"; (2) would leave a "$4 billion gap" in Child Nutrition Program funding that "Congress would not replenish … with annual appropriations"; and (3) "would leave

Child Nutrition Programs, which feed no fewer than 29 million children, with an unprecedented and significant shortfall." ECF No. 21-1 at 5, 6.

The next day, on November 4, 2025, the Plaintiffs filed a motion to enforce the Court's TRO. ECF No. 22. They made two arguments. First, they claimed that the Defendants were failing to comply with the Court's order to "expeditiously" make partial payments by Wednesday, November 5, 2025, because they failed to resolve the associated "administrative and clerical burdens," as the Court required. ECF No. 22-1 at 12-14. Second, they asserted that the Defendants' decision not to make full payments violated the APA and was made in an "arbitrary and capricious" manner, which directly contravenes the Court's order. *Id.* at 17-24. The Plaintiffs requested that "[t]he Court enforce its existing order by entering a further order requiring Defendants to make full SNAP payments for November immediately." *Id.* at 5. In the alternative, they requested that the Court enter a new TRO and preliminary stay, setting aside USDA's decision not to provide full funding for the November SNAP benefits and "compelling the agency to revert to the longstanding status quo ante of fully funding SNAP benefits." *Id.*

Within an hour of the Plaintiffs filing their motion, the President issued another social media post in which he stated that:

> SNAP BENEFITS, which increased by Billions and Billions of Dollars (MANY FOLD!) during Crooked Joe Biden's disastrous term in office (Due to the fact that they were haphazardly "handed" to anyone for the asking, as opposed to just those in need, which is the purpose of SNAP!), will be given only when the Radical Left Democrats open up government, which they can easily do, and not before! Thank you for your attention to this matter. President DJT

Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 4, 2025, at 11:06 AM), https://perma.cc/6QAN-54YU.

Shortly thereafter, the Plaintiffs filed a supplemental notice, asserting that this statement from the President demonstrated that the Defendants were "threatening defiance of the Court's order." ECF No. 23 at 1. The Defendants then filed their own supplemental notice, attempting to walk back the President's statement, and claimed that they were complying with the Court's order because USDA had "notified the States of the reduction [in SNAP benefits] and generated the table required for States to calculate the benefits available for each eligible household in that State." ECF No. 24 at 2.

On the evening of November 5, 2025, the Plaintiffs filed another supplemental notice. ECF No. 27. In it, the Plaintiffs provided further evidence that they claimed demonstrated that the Defendants were in noncompliance with the Court's order. *Id.* at 1. They provided a declaration from an analyst who explained that contrary to the Defendants' claim that USDA intended to spend the full $4.65 billion in contingency funds, a 50% reduction in benefits for each SNAP recipient would cause the agency to disburse only $3 billion and leave $1.5 billion in contingency funds unspent. *Id.* at 2; ECF No. 27-1 at 4.

Very soon thereafter, the Defendants responded with another notice of their own. ECF No. 28. In it, they conceded that they had committed an "error" in directing the States to implement a 50% reduction in SNAP benefits. *Id.* at 2; ECF No. 28-1 at 2. The Defendants explained that, after further calculations, USDA had concluded

10

that only a 35% reduction—not a 50% reduction—was necessary to deplete the SNAP contingency funds, and that it had issued revised allotment tables to the States. ECF No. 28-1 at 2; ECF No. 28-2 at 1. The Defendants claimed that this revised decision was not made "in response to Plaintiffs' notice filed earlier this evening" but that they acknowledged having to make this revision and send updated guidance to the States in a filing submitted earlier that day.[3] ECF No. 28 at 2

After careful review of the parties' submissions, the Court held a hearing on this matter on November 6, 2025, at 3:30 pm at which it issued an oral ruling from the bench. The following discussion sets forth the Court's reasoning in greater detail, which formed the basis for its the oral Order.

## II.     DISCUSSION

### A.     Partial Funding Decision

In its TRO, the Court gave the Defendants two options, to either: (1) use contingency funds to make a partial payment of SNAP benefits ("Option 1"); or (2) use Section 32 funds, contingency funds, or both to make a full payment of SNAP benefits ("Option 2"). If the Defendants chose to proceed with Option 1, they were required to "expeditiously resolve the administrative and clerical burdens it described in its papers," and that "under no circumstances shall the partial payments be made

---

[3] A few hours before and in a separate filing, the Defendants acknowledged in a footnote that, "[a]fter further calculations, USDA anticipates issuing updated tables tonight or tomorrow and Defendants will file a notice once they are issued." ECF No. 26 at 7 n.2.

later than Wednesday, November 5, 2025." ECF No. 19 at 5-6. The record is clear that the Defendants did neither.

The Defendants contend that they have fully complied with the Court's order by providing the contingency funds to the States for SNAP payments.[4] The Defendants filed an Emergency Motion under the sentiment that they were "expeditiously attempting to comply with the Court's order." ECF No. 18 at 2. They also stated in their status report that they "have worked diligently to comply with the Court's order," and they supplemented their report with a declaration from a USDA official, who explained how USDA "is complying with the Court's order and will fulfill its obligation to expend the full amount of SNAP contingency funds…." ECF No. 21 at 2, 3.

Far from being expeditious, the record suggests quite the opposite. As of the date of this decision, SNAP recipients still have not received their benefits. The Defendants contend that there are "procedural difficulties" that make it so that partial SNAP payments "will take anywhere from a few weeks to up to several months" to be disbursed. ECF No. 21-1 at 6, 8. They claim that reducing the amount of SNAP benefits that each recipient receives is a "massive" and "novel system

---

[4] On Wednesday November 6, 2025, the Defendants stated in a filing that they had "fully complied" with the Court's order and issued tables to the States to that effect. As of that time, the Defendants assured the Court that "contingency funds [have] now been provided to States for payment." ECF No. 26 at 7. But then, mere hours later, the Defendants stated that they had committed an error and had to send revised tables to the states. ECF No. 28. This admission makes clear that compliance by Wednesday, September 5, 2025, as required by the Court order, had not been achieved as their "full compliance" required further revisions.

change[ ]" that requires USDA to issue "revised tables" so that each State may calculate "by what percentage maximum SNAP allotments are to be reduced." *Id* at 7.

The Defendants' assertion that "there is nothing more USDA could do," ECF No. 26 at 9, carries no weight. Even before this Court's order was entered, the Defendants were fully aware of the delay and potential errors that such a partial payment would involve: "USDA has never implemented a reduction in SNAP benefits under 7 C.F.R. 271.7. Because no template, processes, or experience exist to inform a reduction in benefits, there are multiple variables that could lead to significant problems in attempting to reduce benefits for every SNAP household in the country." ECF No. 14-2 at 6.

Furthermore, as the Plaintiffs point out, the Defendants "could have begun working to resolve the administrative hurdles once the lapse in appropriations occurred, or even before." ECF No. 22-1 at 13. This is especially true given that USDA had previously, during the first Trump administration in 2019, contemplated such a use of contingency funds during a government shutdown. *Id.* at 13 n.2. This plainly makes clear that this is a problem that could have been avoided. The Defendants knew that, at the time they chose Option 1, they would be prolonging implementation and frustrating the very purpose of the TRO, which is to provide timely relief and prevent further irreparable harm. They instead proceeded, fully aware that Option 2 provided a faster and more practical means of compliance.

The Defendants overlook the fundamental point that compliance is achieved when Americans are fed, not when the federal government shifts the administrative burden of disbursing funds onto the States—especially when there is still no clear disbursement date in sight.[5]  By doing so, the Defendants have undermined both the intent and the effectiveness of this Court's October 31st oral order and its November 1st written order that the Defendants act "expeditiously."  ECF No. 25.; ECF No. 19 at 5.  The Court is not inclined to excuse this noncompliance, particularly where the obstacles the Defendants now invoke are the foreseeable result of their own choices.

Therefore, the Court GRANTS the Plaintiff's Motion to Enforce.  Consistent with its prior orders, the Court hereby ORDERS the Administration to make full SNAP payments to the States by Friday, November 7, 2025, by utilizing available Section 32 funds in combination with the contingency funds.

## B.    Full Funding Decision

Along with their Motion to Enforce, the Plaintiffs also request a second TRO.  ECF No. 22.  They argue that, in addition to the Defendants failing to comply with the Court's order that partial SNAP payments be made "expeditiously," the Defendants also failed to comply with the Court's order that any decision *not* to provide full SNAP payments for the month of November be made in accordance with

---

[5] In fact, the President has stated his intent to defy the Court's order when he posted on social media that "SNAP BENEFITS … will be given only when the Radical Left Democrats open up government … and not before!"  Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 4, 2025, at 11:06 AM), https://perma.cc/6QAN-54YU.

the APA and that such decision could not be arbitrary or capricious.  ECF No. 22-1 at 17.  This argument is addressed below.

### 1.    Standing

As an initial matter, the Defendants argue that USDA's decision not to expend Section 32 funds is unreviewable by this Court because it is "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2).  ECF No. 26 at 9.  The Defendants rely on *Lincoln v. Vigil*, 508 U.S. 182 (1993) to support their argument that USDA's funding decision is "entirely discretionary" and that, as such, this Court has "no leave to intrude."  Id. (quoting *Lincoln*, 508 U.S. at 193).

In making this argument, the Defendants ignore a key tenet of the APA, which is that the statute "establishes a 'basic presumption of judicial review [for] one suffering legal wrong because of agency action.'"  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)).  To honor this presumption, the Supreme Court has read this agency discretion exception "quite narrowly," finding that it only applies in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019) (first quoting *Gardner*, 387 U.S. at 140; and then quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)).  Historically, these "rare circumstances" have been limited to only a few specific types of decisions, such as "a decision not to institute enforcement proceedings," *id.* (citing *Heckler v. Chaney*, 470 U.S. 821, 831-832 (1985), or "a

decision by an intelligence agency to terminate an employee in the interest of national security," *id.* (citing *Webster v. Doe*, 486 U.S. 592, 600-01 (1988)).  Neither of these "rare circumstances" are currently before the Court.

In addition, the APA requires a court to "hold unlawful and set aside agency action" that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The Supreme Court has also recently explained that "the command of the APA" is that "'the reviewing court'—not the agency whose action it reviews—is to 'decide all relevant questions of law' and interpret … statutory provisions.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024) (quoting 5 U.S.C. § 706).  "[A]gency interpretations of statutes … are not entitled to deference," and it is indeed "'the responsibility of the court to decide whether the law means what the agency says.'"  *Id.* at 392 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)).

Here, the Court has jurisdiction to review this action.  As the Defendants have acknowledged, a key dispute in this case is over how certain statutory provisions authorize USDA to expend Section 32 funds.  ECF No. 26 at 9-11.  This is a question that falls squarely within the APA's command that courts—not agencies—decide "all relevant questions of law."  5 U.S.C. § 706; *Raimondo*, 603 U.S. at 398.  In addition, the Court has an obligation to ensure that the agency is not acting in an "arbitrary and capricious" manner in its decision-making process.  5 U.S.C. § 706(2)(A).  Having determined that USDA's actions are reviewable, the Court now proceeds to the merits of the Plaintiffs' request for a new TRO.

### 2.    The Merits

In evaluating a motion for a TRO, the Court considers: (1) the Plaintiffs' likelihood of success on the merits; (2) the possibility that, without an injunction, the Plaintiffs will suffer irreparable harm; (3) the balance of equities between the parties; and (4) the effect of the Court's ruling on the public interest. *See Esso Standard Oil Co. v. Monroig–Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006).

At this stage, the irreparable harm, balance of equities, and public interest considerations are virtually the same as those raised by the parties during the October 31, 2025, hearing before this Court. The Court found that all three factors weighed in the Plaintiffs' favor. As such, the only relevant consideration here is the Plaintiffs' likelihood of success on the merits of their claim.

The Plaintiffs claim that the Defendants' decision *not* to provide full SNAP funding for the month of November was an "arbitrary and capricious" decision, and that it must be set aside. ECF No. 22-1 at 17. They advance four arguments to support their claim: (1) the Defendants "failed to account for the practical consequences" of its decision to only partially fund SNAP; (2) the Defendants' reasoning rested on "a flawed understanding of USDA's statutory authority and Congress's intent"; (3) the Defendants' child nutrition reasoning was "implausible" and "contrary to the evidence"; and (4) the Defendants' desire to conserve funding for child nutrition is "pretextual," and their decision was instead motivated by "partisan political advantage." *Id.* at 18-24. The Court addresses each argument in turn.

### a. Failing to Account for Practical Consequences of Partial Funding

An agency rule is "arbitrary and capricious" if the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). It would also be "arbitrary and capricious" for the agency to ignore "longstanding policies [that] may have 'engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of Univ. of California*, 591 U.S. 1, 30 (2020) (internal citations omitted) (concluding that DHS acted arbitrarily and capriciously where it failed to consider reliance interests that DACA recipients had in the program before it chose to rescind the program).

The Plaintiffs assert that the Defendants have failed to consider how its decision to provide only partial benefits will cause "immense harm to beneficiaries who will go without food assistance during potentially lengthy delays." ECF No. 22-1 at 18-19. The Court agrees. The "procedural difficulties" that the Defendants note in their status report stem from their decision to implement reduced benefits rather than full benefits. ECF No. 21-1 at 6, 7. According to the Defendants, implementing such benefit reductions requires the states to make "massive" and "novel system changes," such as their having to: (1) recode their eligibility systems to "adjust for the reduced maximum allotments"; (2) reduce benefits within their systems, either through "an automated manner with minimal disruption versus manual overrides or computations that could lead to payment errors and significant delays"; and (3) "handle any requests for fair hearings from SNAP households related to the

reduction." *Id.* at 7-8. As a result of these "procedural difficulties," partial SNAP payments could be delayed by "a few weeks to up to several months." *Id.* at 8.

Again, the Court finds it astounding that the Defendants would even choose to go down this path if they were aware of all the difficulties and delays that such partial payment of SNAP benefits would entail. What then of the tens of millions of Americans who rely on the SNAP program? Nowhere in its decision did USDA consider the increased harm that will befall these recipients if they are forced to go without food for "a few weeks to up to several months." This is precisely the irreparable harm that the Court contemplated when it issued its TRO, which is why the Defendants were required to act "expeditiously." ECF No. 19 at 4-5 ("[T]o ensure the quick, orderly, and efficient implementation of the Court's Order … and to alleviate the irreparable harm that the Court found exists without timely payment of SNAP benefits, the Government should, within its discretion, find the additional funds necessary (beyond the contingency funds) to fully fund the November SNAP payments. Simply disregarding this "important aspect of the problem" and these "serious reliance interests" is patently arbitrary and capricious. *State Farm*, 463 U.S. at 43; *Regents*, 591 U.S. at 30.

### b. Misapprehending USDA's Statutory Authority and Congress's Intent

An agency action that is premised on a "legal error" is arbitrary and capricious and must be set aside. *Doe v. Noem*, 152 F.4th 272, 287 (1st Cir. 2025) (internal citations omitted); *see also Badose v. Garland*, 125 F.4th 1, 8, 11 (1st Cir. 2024) (concluding that Board of Immigration Appeals ("BIA") committed legal error where

it engaged in factfinding—something it was statutorily barred from engaging in—and that this warranted vacating the BIA's decision).  "[I]f the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

Throughout their briefing, the Defendants conflate Section 32 funds with the Child Nutrition Programs to make it seem as though they go in tandem (i.e., "Section 32 Child Nutrition Funds" and "Child Nutrition Programs' funds").  ECF Nos. 21 at 2, 26 at 9.  In essence, the Defendants claim that Section 32 funds are to be used *exclusively* to fund the Child Nutrition Programs, and that to use those funds for other purposes would "stray from Congressional intent."  ECF No. 21-1 at 6.  The Plaintiffs argue that this is a misapprehension of USDA's statutory authority and of congressional intent.  ECF No. 22-1 at 19-20.  Again, the Court agrees.

Section 32 of the Agricultural Adjustment Act of 1935 states in relevant part: "Congress has set forth a mandatory, and permanent, appropriation that stems from 30% of customs receipts on all imports from the prior calendar year."  While much of this funding has been appropriated for the Child Nutrition Program, there is no statute prohibiting USDA from using the funding for other purposes.  Rather, USDA has the authority under 7 U.S.C. § 2257 to authorize transfers of these funds "interchangeably" for the "miscellaneous expenses of the work of any bureau, division, or office of the Department of Agriculture."  In fact, USDA conceded to, at the beginning of the current government shutdown, transferring $300 million in Section

32 funds to support the Special Supplemental Nutrition Program for WIC.  *See* ECF No. 21-1 at 6.  This clearly undermines the Defendants' point, as WIC is an entirely separate program from the Child Nutrition Programs.   As such, the Defendants' reasoning relies on a "legal error" that renders their decision "arbitrary and capricious." *Doe*, 152 F.4th at 287; *Chenery Corp.*, 318 U.S. at 94.

### c.    Providing Reasoning That Is Implausible and Contrary to the Evidence

An agency action is "arbitrary and capricious" if it "runs counter to the evidence before the agency" and "is so implausible that it could not be ascribed to a difference in view." *State Farm*, 463 U.S. at 43.

The Defendants contend that transferring Section 32 funds to fully fund SNAP for the month of November creates "an unacceptable risk … because shifting $4 billion dollars to America's SNAP population merely shifts the problem to millions of America's low income children that receive their meals at school."  ECF No. 21-1 at 6.  They claim that such a transfer would leave "Child Nutrition Programs, which feed no fewer than 29 million children, with an unprecedented and significant shortfall" that would not be replenished by Congress in a later appropriations bill.[6]

---

[6] In subsequent briefing, the Defendants also argue that USDA risks violating the Appropriations Clause and the Antideficiency Act if it is forced to disburse Section 32 funds to SNAP.  ECF No. 26 at 15.  The Appropriations Clause provides that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress.  U.S. Const. art. I, § 7.  The Antideficiency Act similarly prevents agencies from obligating or spending funds absent congressional appropriation.  31 U.S.C. § 1341.  The Defendants' argument is unconvincing given that Congress has explicitly authorized the use of Section 32 funds in this way.  *See* 7 U.S.C. § 2257; Section 32 of the Agricultural Adjustment Act of 1935.

*Id.* at 5.  The Plaintiffs challenge this claim as "contrary to the evidence" and "implausible."  ECF No. 22-1 at 20.  The Court agrees with the Plaintiffs.

It is highly unlikely that USDA's transfer of Section 32 funds would lead to immediate and permanent gaps in Child Nutrition Program funding, as the Defendants suggest.  The Plaintiffs rightfully point out that transferring $4 billion to fully fund November SNAP benefits would still leave $19.35 billion in the Section 32 account.  ECF No. 22-1 at 21.  Given that it costs USDA approximately $3 billion per month[7] to administer the Child Nutrition Programs, such a transfer would still leave "enough to fully fund child nutrition through May [2026] and beyond, even if the current lapse in appropriations lasted that long."  *Id.*

In addition, the Defendants' decision not to fully fund SNAP reflects their determination that those funds "must remain available to protect full operation of Child Nutrition Programs throughout the fiscal year, instead of being used for SNAP benefits."  ECF No. 21-1 at 3.  They state—quite definitively—that such a transfer would result in a "$4 billion gap [that] would *not* be filled" by Congress and represents a "permanent loss" to the program.  *Id.* at 5 (emphasis in original).  But, as the Defendants readily acknowledge, "USDA cannot predict what Congress will do…."  *Id.* at 3.  Congress may choose to replenish funds for the Child Nutrition Programs during the next appropriations cycle.  Or it may choose to appropriate additional funds to SNAP, amounts which could in turn be transferred to the Child Nutrition

---

[7] Or, to use USDA's precise language, $36.27 billion per year.  ECF No. 21-1 at 5.

account under Section 2257 to reimburse it for the amounts that account covered. The point is that USDA does not know how Congress will use its power of the purse, so it cannot rest on the assumption that Congress will simply do nothing.

One final point here. Contrary to what the Defendants claim, 29 million children who participate in the Child Nutrition Program are not at risk of immediately going hungry in the event of a transfer of Section 32 funds. Instead, SNAP recipients—16 million of whom are children—will go hungry if they do not receive their SNAP benefits this month. *See* ECF No. 22-1 at 21 (citing Dep't of Agric., *Characteristics of SNAP Households: Fiscal Year 2023* (May 2, 2025), https://perma.cc/RN8A-YD8R). In other words, it defies belief that the Defendants would prioritize a hypothetical disruption in child food assistance, projected to occur no sooner than May of 2026 (if at all), over the very real and immediate risk of children being deprived of their food assistance *today*.

Taken together, the Defendants' arguments run so contrary to the evidence and are so implausible as to make them arbitrary and capricious. *State Farm*, 463 U.S. at 43.

### d. Providing Reasoning That Is Pretextual

Providing a "pretextual" reason for taking agency action "that is incongruent with what the record reveals about the agency's priorities and decisionmaking process" can be a basis for setting aside agency action as arbitrary and capricious. *Dep't of Com. v. New York*, 588 U.S. 752, 782, 785 (2019). Courts are "not required to exhibit a naiveté from which ordinary citizens are free," and they must "ensure

that agencies offer genuine justifications for important decisions." *Id.* at 785. Relatedly, "decisions featuring unjustifiable bias or partisanship are precisely the types of agency actions that 'would work a violation of the arbitrary-and-capricious standard.'" *Level the Playing Field v. FEC*, 961 F.3d 462, 464 (D.C. Cir. 2020) (quoting *Hagelin v. FEC*, 411 F.3d 237, 242 (D.C. Cir. 2005)); *see also* AFSCME, AFL-CIO v. OMB, No. 25-cv-08302-SI, 2025 WL 3018250, at *18-19 (N.D. Cal. Oct. 28, 2025) (finding that plaintiffs were likely to succeed on their arbitrary and capricious claim where agencies sent out "Reduction-in-Force" notices as part of President Trump's "retaliatory and partisan 'policy goal'" of punishing Democratic-oriented agencies during the government shutdown).

The Plaintiffs' fourth and final argument is that the Defendants' stated desire to conserve funding for Child Nutrition Programs is a "pretext," and that the real reason USDA chose not to fully fund SNAP was for "partisan political purposes." ECF No. 22-1 at 23. The Court once again agrees with the Plaintiffs. The Defendants' stated desire to conserve funding for Child Nutrition Programs seems entirely "pretextual" given the numerous statements made in recent weeks by Trump administration officials who make clear that SNAP benefits are being withheld for political reasons.

First, the Defendants' claim is undercut by the banner on USDA's website, which—beginning on or about October 27, 2025—provided that "the well has run dry" on SNAP benefits and that "Senate Democrats" are to blame for the lapse in funding. ECF No. 22-1 at 23 (citing Dep't of Agric., https://perma.cc/BL88-8QU6 (captured on

Oct. 27, 2025, at 10:21 PM)).  That "the well has run dry" cannot be so if, as recent as 2019, the first Trump administration's Agricultural acknowledged that contingency funds could be used to fund SNAP during a government shutdown.  ECF No. 22-1 at 13 n.2 (citing Letter from Jessica Shahin to FNS Regions, Early Issuance of February 2019 SNAP Benefits (Jan. 14, 2019), https://perma.cc/ED49-ZBK8)).  Even more striking is the fact that, since this Court issued its order requiring USDA to fund SNAP during the shutdown, the at-issue "the well has run dry" language has disappeared from USDA's website.  *See* Dep't of Agric., https://www.usda.gov (last checked Nov. 6, 2025).

Second, and most notably, the Defendants' claim is further undermined by President Trump's recent statements on social media.  Initially, the President stated: "If we are given the appropriate legal direction by the Court, it will BE MY HONOR to provide the funding…."  ECF No. 19 at 2 (quoting Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 31, 2025, at 6:10 PM)).  Despite the clear legal direction from this Court, *see* ECF No. 19, and despite the Defendants' indication in a filing of their intent to comply with that order, *see* ECF No. 21, the President nevertheless threatened to withhold SNAP benefits until the end of the government shutdown: "SNAP BENEFITS … will be given only when the Radical Left Democrats open up government, which they can easily do, and not before!"  ECF No. 23 at 1 (quoting Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 4, 2025, at 11:06 AM), https://perma.cc/6QAN-54YU).

This Court is not naïve to the administration's true motivations. *See Dep't of Com.*, 588 U.S. at 785 (2019). Far from being concerned with Child Nutrition funding, these statements make clear that the administration is withholding full SNAP benefits for political purposes. Such "unjustifiable partisanship" has infected the USDA's decision-making, rendering it arbitrary and capricious. *Level the Playing Field*, 961 F.3d at 464; *AFSCME, AFL-CIO*, 2025 WL 3018250, at *18-19.

### 3. The Remedy

Based on the above reasoning, the Court finds that the Plaintiffs have satisfied the requirements for the issuance of a second TRO. First, the Plaintiffs have demonstrated a likelihood of success on the merits of their APA claim. Second, the Court has already determined that irreparable harm is substantially likely to occur— harm that only increased due to the Defendants' failure to comply with the Court's prior order. Third, the balance of the equities and the public interest weigh strongly in the Plaintiffs' favor.

As such, the Plaintiffs have satisfied the requirements for the issuance of a new TRO. The Court GRANTS the Plaintiffs' Motion for a new TRO, and the Defendants are hereby ORDERED to make full payment of November SNAP benefits to the States by Friday, November 7, 2025, by utilizing available Section 32 funds in combination with the contingency funds

## III. CONCLUSION

For the reasons stated above, the Plaintiffs' Motion to Enforce is GRANTED, as well as the Plaintiffs' Motion for a new TRO. (ECF No. 22.) The Defendants are

ORDERED to make full payments of November SNAP benefits to the states by Friday, November 7, 2025, by utilizing available Section 32 funds in combination with the contingency funds.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

November 6, 2025